IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ST. CHARLES HOUSING, LP, MENOWITZ MANAGEMENT CORP., and APARTMENT RENTAL ASSISTANCE II, INC. d/b/a APARTMENT CORP.<br><br>Defendants. | 1:23-CV-6436 (RPK)(PK) |

**THE EEOC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS**


EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

*/s/ Renay M. Oliver*
Renay M. Oliver
Trial Attorney
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
Tel: (929) 506-5289
Fax: (212) 336-3623
renay.oliver@eeoc.gov

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………………….1
RELEVANT BACKGROUND……...…………………………………………………………2
ARGUMENT…………………………………………………………………………………..11
I. CASE-RELATED AND MONETARY SANCTIONS ARE WARRANTED……………11
A. The Court Should Impose Case-Related Sanctions Under Rules 37 and 16……..……11
B. Defendants' Discovery Failures Mandate Monetary Rule 26(g) Sanctions……………14
C. Defendants' and Their Counsel's Conduct Support Monetary Sanctions Under Section 1927 and the Court's Inherent Powers………………..…………………………………...16
D. The Remedies Sought are Reasonable Under the Circumstances……………………..18
CONCLUSION………………………………………………………………………………..18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Agiwal v. Mid Island Mortg. Corp.*,
555 F.3d 298 (2d Cir. 2009)………………………………………………………….. 12

*Allied 100, LLC v. Chadha*,
No. 20-CV-03493, 2021 WL 7184241 (E.D.N.Y. July 26, 2021)…………………...13, 14

*Aristidou v. Aviation Port Servs.*,
No. 18-CV-4040 (RPK/RER), 2021 WL 2471269 (E.D.N.Y. June 17, 2021)…………..12

*Bambu Sales, Inc. v. Ozak Trading Inc.*,
58 F.3d 849 (2d Cir. 1995)……………………………………………………………13

*City of New York v. Fleet Gen. Ins. Grp., Inc.*,
No. 19-CV-6629, 2024 WL 4362490 (E.D.N.Y. Sept. 30, 2024)…………………...16, 17

*Craig v. City of New York*,
No. 1:20-CV-02152, 2022 WL 2238451 (E.D.N.Y. June 22, 2022),……………………16

*EEOC v. Grace Episcopal Church of Whitestone, Inc.*,
No. CV-065302-ERK/WDW, 2012 WL 13085406 (E.D.N.Y. Mar. 7, 2012)…………..18

*EEOC v. Green Lantern Inn, Inc.*,
No. 19-CV-6704-FPG-MJP, 2021 WL 4086148 (W.D.N.Y. Aug. 19, 2021)……….11, 13

*EverHome Mortg. Co. v. Charter Oak Fire Ins. Co.*,
No. 07-CV-98 RRM RML, 2011 WL 4056043 (E.D.N.Y. Apr. 18, 2011)………….12, 18

*Farmer v. Hyde Your Eyes Optical, Inc.*,
No. 13-CV-6653, 2015 WL 2250592 (S.D.N.Y. May 13, 2015)………………………..12

*Gov't Emps. Ins. Co. v. Clarke*,
No. 23-CV-4605, 2025 WL 1519177 (E.D.N.Y. May 28, 2025)………………………..17

*Jianjun Chen v. 2425 Broadway Chao Rest., LLC*,
331 F.R.D. 568 (S.D.N.Y. 2019)…………………………………………….........15, 16

*Kiobel v. Royal Dutch Petroleum Co.*,
No. 02-cv-7618-KMW-HBP, 2009 WL 1810104 (S.D.N.Y. June 25, 2009)…………...15

*Lewis v. Marlow*,
No. 17-CV-8101 (KMK), 2021 WL 2269553 (S.D.N.Y. June 3, 2021)……..................12

*Mahoney v. Yamaha Motor Corp*,
290 F.R.D. 363 (E.D.N.Y. 2013)…………………………………………………….....12

*Markey v. Lapolla Indus., Inc.*,
No. CV 12-4622 JS AKT, 2015 WL 5027522 (E.D.N.Y. Aug. 25, 2015)………14, 15, 16

*Marquez v. Hoffman*,
No. 18 Civ. 7315 (ALC)(GWG), 2022 WL 4076016 (S.D.N.Y. Sept. 6, 2022)……....…13

*S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010)……………………12

**Statutes**

28 U.S.C. § 1927………………………………………………………………………….passim
28 U.S.C. § 1981a. ……………………………………………………………………..……2
42 U.S.C. § 2000e et seq. …………………………………………………………………….2

**Rules**

Fed. R. Civ. P.
16……………………………………….…………………………………………………...passim
Fed. R. Civ. P. 26…..…………………….………………………………………………… passim
Fed. R. Civ. P. 37……………….………………………………….……………………...passim

Plaintiff, the Equal Employment Opportunity Commission ("EEOC") respectfully submits this memorandum of law in support of its motion seeking sanctions against Defendants[1] and their counsel pursuant to Federal Rules of Civil Procedure 37(b)(2)(A), (C), 16(f), 26(g)(1)(B)(ii), 28 U.S.C. § 1927, and this Court's inherent powers.

## PRELIMINARY STATEMENT

"The documents are going to show what you think they show." Counsel Kenneth Chase made this statement to the undersigned as the pair exited the courthouse after the July 9, 2026 conference on an Order to Show Cause for Defendants to explain their repeated failures to comply with discovery orders. For a year, Defendants had feigned ignorance as to the relevance of certain non-party entities to this litigation, defying discovery order after discovery order, only to admit the truth of the EEOC's allegations – Defendants, together with the non-party entities associated with the properties they manage, operate as an integrated enterprise.

Defendants' recalcitrant conduct over related and highly relevant, *ordered* discovery has turned this case concerning a single individual who was employed for only four months into a multi-year battle. Likewise, their counsel's improper conduct during meet-and-confers reflects an intentional effort to avoid compliance with the Court's orders and Judge Kuo's Individual Rules of Practice. Defendants have delayed the resolution of this litigation long enough. Their conduct, while shocking, has become predictable. This Court must impose sanctions.

For the reasons set forth herein, the EEOC respectfully asks that the Court issue an order: (1) deeming as established that, for the purposes of this litigation, Defendants and the Non-Party Entities operated as an integrated enterprise (the "Menowitz Enterprise"); (2) deeming as

---

[1] Defendants are St. Charles Housing, LP, Menowitz Management Corp., and Apartment Rental Assistance II, Inc. d/b/a Apartment Corp. The EEOC also submits a declaration of Renay M. Oliver ("Decl."), which includes statements relevant to the motion and exhibits ("Ex.") supporting the motion.

established that the Menowitz Enterprise had 501 or more employees for 20 or more calendar weeks in 2020 and/or 2021, *see* 28 U.S.C. § 1981a(b)(3)(D); (3) precluding Defendants from presenting evidence at trial of corporate wealth; (4) precluding Defendants from presenting evidence at trial as to Charging Party J'Layna Andrus's job performance or qualifications; (5) imposing the warned monetary sanction of $100 per day from August 18, 2026 until Defendants produce all outstanding documents and responses; and (6) awarding reasonable fees and costs.

## RELEVANT BACKGROUND

The EEOC brought this action on August 29, 2023, to remedy pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Dkt. No. 11, Am. Compl. Defendants operate a multigenerational family business of vast real estate holdings consisting of more than 40 commercial and residential properties across the country. Decl. ¶ 3; Dkt. No. 65, at n.7. Charging Party J'Layna Andrus worked as a property manager at one of Defendants' properties from late September 2020 through February 8, 2021, when Defendants fired her mere days after learning of her pregnancy. Decl. ¶ 3.

***The Discovery Requests at Issue***

The EEOC served their first and second set of discovery requests on each Defendant in August 2024 and April 2025, respectively. *See* Decl. ¶11. The EEOC's discovery requests sought information about properties "owned or managed," however, Defendants have since asserted that they do not own any properties directly. *Id.*¶¶ 12, 27. Thus, and for the purposes of this motion, the EEOC will refer only to properties (and associated entities) managed by Defendants. The EEOC has long alleged that Defendants and those entities operate as an integrated enterprise and requested documents relevant to payroll and personnel records, tax returns and financials, and corporate structure. *See* Dkt. No. 65 (citing relevant case law on these topics). Defendants

repeatedly denied (1) operating as an integrated enterprise; and (2) having the requisite 15 or more employees to be employers under Title VII. *See* Dkt. Nos. 73, at 2; 75, at Tr. 10:14-16.

The EEOC's requests also sought routine discovery concerning direct comparators and a supervisor-decisionmaker. *See* Dkt. Nos. 65, 72. The EEOC first sought information about Defendants' employees, specifically for St. Charles Housing, during its investigation of the Charge. *See* Decl. ¶¶ 8-9. At that time, Defendants identified just one other St. Charles Housing employee: comparator Vicky Tillman. *id.* ¶10, Ex. 3. In litigation, the EEOC specifically requested the identities of any individual who assumed any or all of Andrus's duties following her dismissal and issued a corresponding document request for the "complete personnel files of the individual(s) identified in response to Interrogatory No. 12." Decl. ¶ 14. The EEOC also requested the personnel file of supervisor and decisionmaker Ginger Positerry. *Id.*

In response, Defendants identified comparator Deon Tolliver[2] but no others. *Id.* ¶ 15. Defendants refused to produce the responsive personnel documents, accusing the EEOC of "harassing, abusive, and scorched earth discovery tactics" and "seeking to harm providers of low income housing, who employ female managers, by financially punishing those who, like Defendants, help people of limited means." *Id.* ¶¶ 16-18.

Nearly two years later, and only pursuant to this Court's orders, Defendants produced additional employee records, including payroll records for St. Charles Housing that identified several other employees on payroll at the time of the EEOC's investigative request, including one, Lillian Granderson, who assumed Andrus's duties in 2021. *Id.* ¶ 19. Defendants produced only pay records for Granderson. *Id.* By contrast, they also produced for comparators Tolliver and Tillman applications and new hire materials, HUD testing, and information from Defendants' Help

[2] Tolliver was not employed by Defendants when the EEOC made its April 2022 investigation request.

System (electronic personnel profile). *Id.* Defendants have now certified that no additional documents exist, Ex. 4, but provided no substantive justification for the delayed identification of Granderson or production of personnel files. *See* Dkt. No. 102.

***Defendants' Willful Noncompliance with Court's Orders***

On September 12, 2025, after numerous conferrals and promises to produce, the EEOC filed its motion to compel. Dkt. No. 65. Defendants promised to meet their discovery obligations, *see* Dkt. No. 68; Sept. 22, 2025 Order, but failed. Dkt. No. 72, EEOC Jan. 8, 2026 Letter Motion. The Court scheduled the first of six conferences[3] and numerous discovery orders.

***The January 23, 2026 Order***: The Court granted the EEOC's motion and ordered Defendants to produce by ***February 6***, all outstanding discovery, including on comparators and the integrated enterprise doctrine. *See* Jan. 23 Order. The Court also directed the parties to confer, *id,* which they did at length on January 30, 2026. *See* Dkt. No. 76, at 1. The EEOC memorialized those discussions in a detailed February 3, 2026 letter. *Id.*, Ex. 1. Defendants failed to meet their deadline, and on February 13, 2026, the EEOC filed a letter motion to enforce the Court's orders and for leave to move for sanctions. *See* Dkt. No. 76.

***The February 26, 2026 Order*:** The Court presided over a nearly two-hour-long conference and then issued its comprehensive February 26, 2026 Order, making clear Defendants' obligations to produce by ***March 20***, all outstanding discovery, including the objected-to discovery concerning non-party entities and financials, and over Defendants' objections declining to revise the parties' February 2022 confidentiality order. *See* Feb. 26 Order. Defendants failed to comply but requested several brief extensions, *see* Dkt. Nos. 79, 80, 81, 82, which the Court granted through ***April 3***.

[3] Transcripts can be found at Dkt. Nos. 75 (Jan. 23); 78 (Feb. 26); 90 (Apr. 14); 91 (May 6); 97 (July 9); and 100 (Aug. 12).

Mar. 23, 26, 30 Orders; Apr. 1 Orders[4] ("No further extensions of time will be granted.").

Defendants did not meet their April 3 deadline and instead filed a letter, Dkt. No. 84, claiming, falsely, that the parties were nearing agreement on a stipulation that would obviate the need for much of the discovery related to the integrated enterprise issue.[5] Defendants made no mention of the outstanding comparator and supervisor discovery, which the Court noted. *See* Apr. 6 Order (directing Defendants to file letter "stating whether they have fully complied with each requirement of the Court's Feb. 26, 2026 Order."). They had not. Dkt. No. 85.

***The April 15 and May 7, 2026 Orders:*** At the April 14, 2026 conference, the Court again ordered Defendants' compliance. The Court also permitted Defendants to file by April 15, with no obligation for the EEOC to accept, a Notice stipulating to certain facts relevant to the integrated enterprise and Title VII numerosity issues and ordered the parties to submit a joint letter discussing the effect of the Notice. *Id.* Defendants filed their Notice, but the parties' joint letter revealed deep disagreement as to the value of the Notice and the outstanding discovery. *See* Dkt. Nos. 88, 89.

During the May 6 conference, the Court determined that the Notice *did not* obviate the need for any of the ordered discovery but allowed the parties a final opportunity to agree to a stipulation filed no later than May 12. *See* May 7 Order. The Court also stated that if a stipulation was not executed by that date, the remaining discovery would be due. *Id.* The Court further ordered Defendants to provide by May 20, other discovery that had been the subject of prior orders. *Id.*

At both conferences, the Court warned Defendants of sanctions of fines and "more serious repercussions" for continued noncompliance. *See* Dkt. Nos. 90, at Tr. 58:16-24; 91, at Tr. 62:10-30; *see also* May 7 Order.

---

[4] The Court issued two Orders on April 1; the first also provided: "Defendants are admonished for their continued failure to comply with Judge Kuo's Individual Practice Rules."

[5] The EEOC had suggested this option since fall 2025, but Defendants repeatedly objected. Dkt. No. 65.

***June 24 Order to Show Cause:*** The Court issued an order for Defendants to show cause for their continued noncompliance, and scheduling an in-person hearing for them to do so. Jun. 24, 2026 Order to Show Cause. Defendants attempted to stave off the hearing by filing, without the EEOC's consent or signature, a stipulation concerning the integrated enterprise and numerosity issues as "awaiting countersignature". *See* Dkt. No. 96. That stipulation was an old, *already rejected* EEOC draft that had been *modified* by Defendants. *Id.* The EEOC objected as the Court had already issued a clear directive on the stipulation issue. *See* May 7, 2026 Order; Dkt. No. 97.

***The July 13, 2026 Order:*** The Court held the show cause conference on July 9, 2026.[6] Rather than explain their noncompliance, Defendants attempted to shift the blame to the EEOC *and falsely* claimed that the parties had reached an agreement, which led to a lengthy discussion about *contract* law. *See* Dkt. No. 97. The Court held that the parties had not reached agreement. *Id*. After the EEOC identified all outstanding ordered discovery, the Court set ***August 10***, as the deadline for *full compliance* – a date requested *by* Defendants. *See* Dkt. No. 97, Tr. 75:5-18. The July 13 Order also provided an itemized list of the (long overdue) discovery for "absence of doubt as to Defendants' obligations . . . ." Jul. 13, 2026 Order. Lastly, the Court "warned that further non-compliance with the Court's Orders may result in sanctions." Jul. 13 Order.

Defendants did not comply with the July 13, 2026 Order. Instead, they filed a belated extension request *on their August 10 deadline*, seeking an additional week to comply. *See* Dkt. Nos. 98. In that letter, Defendants claimed substantial compliance with the July 13 Order and offered to provide the Court with a detailed status update by end of day on August 11, 2026. However, that letter, Dkt. No. 99, made plain the significant deficiencies in Defendants' responses.

***The August 12, 2026 Order:*** During the August 12, 2026 conference, the Court granted

[6] Defense counsel arrived nearly 50 minutes late, claiming he had the incorrect time and had not seen the EEOC's and the Court's efforts to reach him. *See* Jul. 13, 2026 Order; Dkt. No. 97, *generally*.

Defendants until ***August 17***, to comply fully. The Court stated that this was Defendants' "one last chance and then there will be sanctions." Dkt. No. 100, at Tr. 8:12-15; Aug. 12. Order (warning daily sanctions). The EEOC expressed its skepticism that Defendants would be able to comply given the quantity of materials outstanding and counsel's admission about his collection process. *Id.* at Tr. 10:18-24. Defendants produced documents and materials between August 17-19, 2026. *See* Dkt. No. 102. On August 21, 2026, the EEOC reported Defendants' continued noncompliance and renewed its request for leave to move for sanctions, *see id.*, which the Court permitted.

***Defense Counsel's Conduct During Conferences*:** Defense counsel's lack of preparation was a recurrent issue during the parties' conferences, including his inability to report on the existence of certain documents and the status of collection, causing the Court to doubt his collection effects. *See* Dkt. Nos. 90, at Tr. 45-16:25, 46:22-47:1. 91, at Tr. 60:7-63:2. On April 14, 2026, the Court highlighted this conduct when counsel *claimed* that documents did not exist or had been produced:

> THE COURT: [T]his is beyond what is acceptable in court because you made the representation that made it sound like you actually did produce things and now you're saying they don't exist. So you need to be clear about what you are saying to the Court because we are on the record … But it is also misleading to say to the extent that they exist when you are now representing that nothing exists. …THE COURT: So then you need to be clearer about what you are producing and what exists and doesn't exist. This is such basic federal court practice. And so to be having this discussion is really beyond what I expect of counsel who appear in federal court.

Dkt. No. 90, at Tr. 45-16:25, 46:22-47:1; *see* Apr. 15 Order ("Defendants' counsel must supervise the search and production of documents [] and may not rely on their clients' representations of what is within Defendants' possession or control.").

Similarly, defense counsel's misstatements or claimed confusion over the outstanding requests led the Court to rely on the EEOC's detailed filings and letters to Defendants. *See* Dkt. No. 76-1; Apr. 15; May 7; July 13 Orders. Further, after being unable to respond to multiple

previous inquiries from the Court as to the number and identities of the non-parties at issue,[7] defense counsel finally admitted knowledge of the universe of responsive entities, noting that he had represented the Menowitz Enterprise "for quite some time" and that he had a "very good understanding" of the properties. *See* Dkt. No. 91, at Tr. 9:20-10:1. Counsel even joked that he "could do pretty well" at naming them off the top of his head. *Id.* at Tr. 10:18-24.

***Defense Counsel's Conduct of Meet and Confers Also Warrants Sanctions***

Defense counsel has long engaged in inappropriate and unprofessional conduct, violating this Court's orders and Individual Practice Rules, to hinder the EEOC's case.

***Refusals to Meet and Confer or Provide Input for Ordered Joint Letters***

Defendants have repeatedly refused to comply with the Court's orders and Practice Rules for conferrals and submissions, affecting the EEOC's own ability to comply. *See, e.g.*, Dkt. Nos. 40, 42 (refusals to confer about deposition dates); Dkt. Nos. 51, 64, 65, 72, 76, 86, 92, 94 (refusals to confer or provide input for ordered joint letters). In 2025, the EEOC began to request court-ordered deadlines for conferrals and joint letters due to counsel's conduct. *See* Dkt. No. 51 n.2, 62, Aug. 15, 2025 Order, *see also* Dkt. Nos. 57, 70. But that had little effect. *See supra*.

Counsel's conduct also prevented the EEOC from complying with the April 15 Order, requiring the parties to confer on language for a stipulation. Decl. ¶ 36. The EEOC made multiple attempts (as ordered), Dkt. Nos. 92, 94; May 7 Order, but defense counsel ignored them until May 13, 2026—the day *after* the Court's deadline on that issue. *See* Dkt. No. 92, 94. More recently, on August 26, 2026, the EEOC wrote to counsel about the parties' upcoming September 1 filing. *See* Ex. 10, at 4; August 18, 2026 Order. Given the deficiencies the EEOC raised, *see* Dkt. 102, the EEOC proposed that Defendants draft and share their section first. Ex. 10. While the Court had

[7] *See* Dkt. No. 78, at Tr. 70-19-71:4.

requested a proposed discovery deadline, the EEOC would not be able to suggest one absent Defendants' production of outstanding *ordered*-discovery. Defendants emailed on August 28, 2026, threatening to file their own letter, and refusing to include what he deemed "unnecessary, misleading, and deceitful representations [] regarding discovery." Ex. 10 at 3. Defendants docketed their own letter 30 minutes later, Dkt. 103, in defiance of the Court's Aug. 18 Order for a *joint* filing. *Id.*at 2. Defendants also complained that the EEOC's August 21 letter was "misleading" and "inaccurate" but did not claim full compliance with the Court's Aug. 12 Order. *Id.*

***Improper Behavior and Attacks on EEOC Counsel***

The EEOC has conferred in good faith throughout these disputes, providing substantive explanations of the EEOC's positions and the status of discovery, including at least four detailed letters (which, as discussed above, the Court has relied on repeatedly). *See* Dkt. No. 76-1, 92-1; Apr. 15, May 7, July 13 Orders. The same cannot be said for defense counsel, who repeatedly used the parties' emails and conferral calls to deny the relevance of ordered discovery and demand that the EEOC reargue and *prove to defense counsel* matters already decided.

For nearly a year, defense counsel denied the Non-Party Entities' relevance to this matter. *See* Decl. ¶ 28, Exs. 11, at 1, 7 (March 26, 2026: "What other buildings are you seeking to engage in a fishing expedition with respect to?"); March 30, 2026 ("This enterprise level is particularly bizarre and troubling."). Counsel also claimed to the Court that it did not know "with any certainty" the number of non-party entities, only to brag about his knowledge later. *Compare* Dkt. No. 78, Tr. 70:4-22 *with* Dkt. No. 91, at Tr. 10:18-24. The EEOC initially proposed a stipulation to streamline discovery related to the integrated enterprise, but Defendants eventually used the prospect of a stipulation as an excuse for violating court orders and as a tool to blame the EEOC for delaying the close of discovery. Dkt. No. 93. It required three conferences to stop counsel from

engaging in this conduct. *Id.* Defense counsel then admitted after the July 9, 2026 conference that the ordered discovery would reveal the integrated enterprise alleged. *Id*. ¶ 41.

The EEOC was not surprised by defense counsel's admission or subsequent conduct, as he has vacillated between cooperative and combative conduct, becoming more combative on the eve of deadlines. *See* Exs. 7-12, *generally*. For example, counsel has repeatedly accused EEOC counsel of "defamation" due to the press release the EEOC issued *in 2023* upon filing suit. On March 20, 2025, counsel wrote: "My clients are willing to make a donation in connection with a dismissal and mutual releases. Otherwise, we believe this is tortious interference and potentially defamation." Ex. 8. He demanded, "If you are not willing to dismiss the case, I want to meet with your supervisor today." *Id.* This was but one of many demands that the EEOC dismiss this case or to speak with a supervisor. Exs. 7-12. Such demands typically followed those that the EEOC arbitrarily narrow or "streamline" discovery, *i.e.* submit to Defendants' will and accept far less than the Court ordered and the case requires. *Id.*[8]

Counsel has also threatened to file "complaints" against EEOC counsel. Decl. ¶ 46. On March 30, he wrote calling the EEOC's conduct "abusive" and "lawfare," demanding to speak to a supervisor, and purporting to "give the EEOC a chance to police itself before the Inspector General is informed." Ex. 11.[9] On July 29, counsel claimed the EEOC had "refused to articulate any relevant usage for the discovery sought by the EEOC as to dozens of non-party private entities. . . ." calling it "unreasonable" and evidence of "improper conduct." Ex. 12. All while he now admits the integrated enterprise. *Supra* at 10.

[8] The Court rejected these efforts to avoid discovery. Aug. 12 Order ("'Streamlining' or other attempts to make alternative productions which are not compliance with the Court's orders will not be tolerated.").
[9] Of course, the EEOC does not object to defense counsel *making complaints* about this litigation, but rather defense counsel's use of threats to force the EEOC to abandon its case where the parties disagree on the merits, and the EEOC merely seeks relevant court-ordered discovery.

Defense counsel has also accused the EEOC of "demonizing" Positerry and of targeting his clients, the Menowitz family, for an unspecified improper motive. *See, e.g.*, Ex. 11 ("My clients are being framed in New York after a forum shop and this is litigation abuse. This is not justice. It is government overreach."; Ex. 10 ("The EEOC has waged an improper campaign of harassment against a family business for no good reason."); *Supra* at 2-3 (response to document requests).

Defendants' and their counsel's efforts have delayed Defendants' compliance and impaired the EEOC's case. For the reasons discussed herein, the above conduct warrants strong sanctions.

## ARGUMENT

## I. CASE-RELATED AND MONETARY SANCTIONS ARE WARRANTED

As this Court *warned Defendants*, "[t]he Federal Rules of Civil Procedure allow for all kinds of sanctions that are in the wide discretion of the district court unlikely to be overturned by a Circuit Court of Appeals." Dkt. No. 100; *see EEOC v. Green Lantern Inn, Inc.*, No. 19-CV-6704-FPG-MJP, 2021 WL 4086148, at *8 (W.D.N.Y. Aug. 19, 2021) (internal quotations and alterations omitted)), *report and recommendation adopted,* No. 19-CV-6704-FPG, 2021 WL 4081109 (W.D.N.Y. Sept. 8, 2021). Defendants did not heed this warning. Defendants' sustained defiance of the Court's clear orders is inexcusable and warrants strong sanctions.

### A. The Court Should Impose Case-Related Sanctions Under Rules 37 and 16

Rule 37(b)(2)(A) provides that when a party "fails to obey an order to provide or permit discovery, . . . a court may issue further just orders," including, sanctions sought here,"(i) directing that the matters embraced in the order or other designated facts to be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence . . . .". Fed. R. Civ. P. 37(b)(2)(A) (permitting sanctions for violations of orders, including Rule 26(f) and 37(a)). In determining whether (and which) sanctions are appropriate, courts

consider "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Aristidou v. Aviation Port Servs.*, No. 18-CV-4040 (RPK/RER), 2021 WL 2471269, at *3 (E.D.N.Y. June 17, 2021) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) ("The Agiwal factors")). However, "these factors are not exclusive, and they need not each be resolved against the party opposing the sanctions." *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) (internal quotation marks and citation omitted).

Under Rule 16(f), "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)" for a party or its attorney's failure to obey a scheduling or pretrial order. Fed. R. Civ. P. 16(f). The same standards apply for imposing sanctions under Rule 16 and Rule 37. *See Mahoney v. Yamaha Motor Corp*, 290 F.R.D. 363, 367 (E.D.N.Y. 2013). Rule 16 sanctions are "within the sound discretion of this Court, . . . the fact that a party violated a pretrial order is sufficient to allow a Rule 16 sanction. *Id.*, at 368.

The *Agiwal* factors weigh in favor of imposing the requested sanctions. First, the record is clear that Defendants' disobedience has been willful through their violation of *six* orders to produce this discovery. *Supra* at 4-9. "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *Lewis v. Marlow*, No. 17-CV-8101 (KMK), 2021 WL 2269553, at *6 (S.D.N.Y. June 3, 2021) (citation omitted); *see Farmer v. Hyde Your Eyes Optical, Inc.*, No. 13-CV-6653, 2015 WL 2250592, at *7 (S.D.N.Y. May 13, 2015) (finding "willful" repeated violation of court orders); *EverHome Mortg. Co. v. Charter Oak Fire Ins. Co.*, No. 07-CV-98 RRM RML, 2011 WL 4056043, at *3 (E.D.N.Y. Apr. 18, 2011)

(finding "persistent refusal to comply" as "sufficient evidence" of willfulness) (citation and quotation marks omitted), *report and recommendation adopted,* No. 07-CV-98 RRM RML, 2011 WL 4055741 (E.D.N.Y. Sept. 12, 2011).[10] This Court's orders could not have been clearer. *See e.g.*, Jul. 13 Order (providing an *itemized* list of the outstanding discovery).

Second, it is similarly obvious that lesser sanctions would have no effect on their conduct. While courts weigh carefully the imposition of "harsh" sanctions, to be effective, a sanction must be considered in light of the conduct at issue. Further, "[t]he Second Circuit has long recognized, [that] discovery orders are meant to be followed." *Green Lantern Inn, Inc.*, 2021 WL 4086148, at *8 (quoting *Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 853 (2d Cir. 1995) (alterations omitted)), *abrogated on other grounds by 4 Pillar Dynasty LLC v. New York & Co., Inc.,* 933 F.3d 202 (2d Cir. 2019). "A party who flouts [discovery] orders *does so at his peril*." *Id.* (citation omitted and emphasis added)). The Court first warned Defendants about the possibility of sanctions on April 14, and warned about daily sanctions on August 12, 2026. *Supra* at 5, 6. Defendants have never provided even a plausible justification for their conduct. *See* Dkt. Nos. [] (letters to the Court). Monetary sanctions alone are not an effective deterrent for Defendants. *See Allied 100, LLC v. Chadha*, No. 20-CV-03493, 2021 WL 7184241, at *9 (E.D.N.Y. July 26, 2021) (Kuo, J) ("[A]n award of attorneys' fees and expenses is the 'mildest' sanction under Rule 37(b) . . . ." (citation omitted)). Courts have upheld sanctions much harsher than those sought here, for similarly violative conduct. *See, e.g.*, *Bambu Sales, Inc.*, 58 F.3d at 849 (affirming default judgment for noncompliance with discovery orders); *Marquez v. Hoffman*, No. 18 Civ. 7315 (ALC)(GWG), 2022 WL 4076016, at *14 (S.D.N.Y. Sept. 6, 2022) (dismissal for violating scheduling and discovery orders), *report and recommendation adopted sub nom. Marquez v.*

[10] Defendants' refusal to produce the ordered discovery is even more galling considering counsel's admission that the Menowitz Enterprise is an integrated enterprise. Decl. ¶ 41.

*Silver*, 2023 WL 2088522 (S.D.N.Y. Feb. 17, 2023).

Third, Defendants' conduct has lasted eight months at a minimum and, more reasonably, over a year. *See* Jun. 18, 2025 Order to Show Cause (concerning this same discovery). Defendants' extended and unwarranted noncompliance has burdened this Court's and the parties' resources for far too long. And the clock is still ticking. Defendants have yet to comply fully. This Court has awarded sanctions for far less. *See Allied 100, LLC*, 2021 WL 7184241, at *9 (Kuo, J) (awarding monetary sanctions after two hearings and two orders giving additional time to comply).

Fourth, the Court repeatedly warned Defendants that it may impose sanctions for continued noncompliance. *See, e.g.*, Feb. 26 Order, Dkt. No. 90, at Tr. 58:16-24,[11] May 7 Order, Jul. 13 Order, Aug. 12 Order; *see also* Jun. 24 Order to Show Cause. Even setting aside the Court's *previous* warnings of sanctions for noncompliance, on August 12, the Court was clear that further noncompliance might result in monetary sanctions *and* case-related sanctions. Dkt. No. 100, at Tr. 8:1-22; 11:15-21 (explaining the possibility of financial and case-related sanctions, including a potential daily $100 fine for noncompliance). Defendants' continued refusal to comply in the face of such a warning further underscores the appropriateness of the sanctions sought.

**B. Defendants' Discovery Failures Mandate Monetary Rule 26(g) Sanctions**

"Rule 26(g) is intended to deter and curb discovery abuses, including evasive responses, by explicitly encouraging the imposition of sanctions." *Markey v. Lapolla Indus., Inc.*, No. CV 12-4622 JS AKT, 2015 WL 5027522, at *18 (E.D.N.Y. Aug. 25, 2015) (citation omitted), *report and recommendation adopted*, No. 12-CV-4622(JS)(AKT), 2016 WL 324968 (E.D.N.Y. Jan. 26, 2016). The Rule requires an attorney of record to sign "every discovery request, response, or objection" Fed. R. Civ. P. 26(g)(1), and in doing so, certify "that to the best of her 'knowledge,

[11] The Court also warned Defendants about their repeated, late filings. Dkt. No. 90, at Tr. 35:14-21.

information, and belief formed after a reasonable inquiry, the response is (1) consistent with the Federal Rules of Civil Procedure and justified under existing law; (2) not interposed for any improper purpose, such as to unnecessarily delay or needlessly increase the costs of litigation; and (3) reasonable given the importance of the issue and the circumstances of the case." *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, 331 F.R.D. 568, 570-71 (S.D.N.Y. 2019) (citation and quotation marks omitted); Fed. R. Civ. P. 26(g)(3). Where there is a violation without substantial justification, the court "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both", Fed. R. Civ. P. 26(g)(3). *Kiobel v. Royal Dutch Petroleum Co.*, 02-cv-7618-KMW-HBP, 2009 WL 1810104, at *2 (S.D.N.Y. June 25, 2009) (quoting Fed. R. Civ. P. 26(g)(3) (emphasis added)). Because Rule 26(g) "permits sanctions, including reasonable attorneys' fees, 'caused by the violation' of the Rule" some harm must have "result[ed] from the alleged violation." *Markey*, No. CV 12-4622 JS AKT, 2015 WL 5027522, at *18.

Defendants' discovery responses (delayed or missing) have prejudiced the EEOC. For example, the EEOC has sought information concerning the identity of Defendants' employees, including working for St. Charles Housing, since its investigation of the Charge. *See supra* at 2. The number and identity of employees was critical to the EEOC's need to establish numerosity and rebut Defendants' claims about Andrus's performance and qualifications, *see, e.g.* Dkt, No. 16, Answer, at Affirmative Defenses 2-4. That Defendants now claim they have produced all responsive documents, *see* Ex. 4, does not excuse defense counsel's lack of diligence concerning this discovery, as the Court recognized. *See* Apr. 15 Order (requiring defense counsel to supervise the collection and production of documents, not merely rely on client statements). Defendants' efforts to locate and produce comparator discovery remain a concern, especially since materials Defendants produced reflect information for other individuals employed before or after Andrus.

*See* Decl. ¶ 20. Either Defendants have not conducted a thorough search as so sworn, or documents that were once available have been lost or destroyed. Moreover, the EEOC made the Granderson discovery, not Defendants. Decl. ¶ 20. Had defense counsel conducted the "reasonable inquiry" required of him under Rule 26(g)(1), he would have, at a minimum, identified Granderson in the initial responses to Interrogatory No. 12. Thus, counsel's "certification violates Rule 26 without substantial justification, sanctions are mandatory." *Jianjun Chen*, 331 F.R.D. at 571 (citations omitted). Defendants cannot avoid Rule 26(g) sanctions. *See Markey*, 2015 WL 5027522, at *18 (burden on disclosing party to prove "substantial justification or harmlessness") (citations omitted)). Defendants have not provided evidence of substantial justification, nor could they prove that these failures were harmless. They have never explained why the identification of and production of personnel files of *four* people took nearly two years. The EEOC has been prejudiced by both the delayed identification and the lack of complete comparator documents necessary to rebut Defendants' claims about Andrus's job performance. ("Harmlessness means an absence of prejudice"). The Court must award sanctions for Rule 26(g) violations;[12] the EEOC asks for its "reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3).

### C. Defendants' *and* Their Counsel's Conduct Support Monetary Sanctions Under Section 1927 and the Court's Inherent Powers

Under 28 U.S.C. § 1927, a court can impose sanctions on an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." *Craig v. City of New York*, No. 1:20-CV-02152, 2022 WL 2238451, at *16 (E.D.N.Y. June 22, 2022) (Kuo, J.), *aff'd,* No. 24-1180-CV, 2025 WL 1604359 (2d Cir. June 6, 2025). Section 1927 targets an attorney's "course of conduct" during the litigation. *City of New York v. Fleet Gen. Ins. Grp., Inc.*, No. 19-CV-6629, 2024 WL 4362490, at *3-4 (E.D.N.Y. Sept. 30, 2024) (Kovner, J.) (citation omitted). While, generally, "[a]n

[12] The nature of the sanction is within the court's discretion. *See Jianjun Chen*, 331 F.R.D. at 571.

award made under § 1927 must be supported by a finding of bad faith", *i.e.,* motivated by improper purposes such as harassment or delay, *Fleet*, 2024 WL 4362490, at *3-4 (citation omitted), bad faith is *not* necessary where an attorney "violat[es] a court order or [engages] in other misconduct that is not undertaken for the client's benefit.'" *Gov't Emps. Ins. Co. v. Clarke*, No. 23-CV-4605, 2025 WL 1519177, at *1 (E.D.N.Y. May 28, 2025) (Kuo, J.) (citation omitted).

The Court may likewise award sanctions pursuant to its inherent powers. "The Second Circuit has remarked that the only meaningful difference between sanctions under Section 1927 and under a court's inherent powers is that awards under Section 1927 may only be made against attorneys, while sanctions under a court's inherent power may be made against an attorney, a party, or both." *Fleet*, 2024 WL 4362490, at *4 (citations and quotation marks omitted).

Defense counsel has "unreasonably and vexatiously" multiplied these proceedings with his conduct. *See* 28 U.S.C. § 1927. Two main areas of the EEOC's discovery requests concern the integrated enterprise and comparator information. *Supra* at 2-3. Counsel wavered between ignorance of the relationship between Defendants and the Non-Party Entities and treating the EEOC's discovery requests as an effort to harass the Defendants for an impermissible motive. *Supra* at 10-13; *see* Decl. ¶¶ 28, 42-47. Defense counsel was not merely asserting a "colorable claim"; rather, he was using the issue to delay production of documents. *Supra* at 7-10. Defense counsel also raised concerns over a two-year-old confidentiality order to deny EEOC access to materials, *supra* at 4, and weaponizing the stipulation to create more delay. Dkt. No. 97 at Tr. 23:12-34:9.

Defendants and their counsel have caused the EEOC to expend more than 100 hours to obtain this discovery, including over eight hours of court conferences, reviewing discovery responses and identifying deficiencies, drafting and responding to more than 16 substantive letters,

engaging in more than 10 conferral calls exchanging more than 100 emails, and drafting this motion. *See* Decl. ¶ 48. An award of reasonable attorneys' fees and costs is appropriate.

### D. The Remedies Sought are Reasonable Under the Circumstances

The EEOC's proposed sanctions are reasonable and crafted to address – *but do not remedy fully* – the prejudice caused by Defendants' obstructionist behavior. The EEOC still does not have all the ordered discovery, *see* Dkt. 102, at 3, impeding the EEOC's ability to litigate its case, including depositions that may be necessary after written discovery has been completed. The case-related sanctions the EEOC seeks now are reasonable given this gulf. In *EEOC v. Grace Episcopal Church of Whitestone, Inc.*, the court ordered similar case-related and evidentiary-based sanctions after a lengthy record of noncompliance. No. CV-065302-ERK/WDW, 2012 WL 13085406, at *14-15 (E.D.N.Y. Mar. 7, 2012) (deeming as established integrated enterprise and numerosity matters). Similar sanctions should be awarded here. Because Defendants delayed or failed to provide all ordered financial and organizational documents, the Court should deem as admitted the Menowitz Enterprise, open to the highest damages cap, and preclude Defendants from introducing evidence to minimize their corporate worth. Because they delayed or failed to provide comparator discovery, Defendants should be precluded from arguing that Andrus had poor performance.

The EEOC's requested sanctions are reasonable given Defendants' blatant disregard of the clear threat of *daily* fines, case-related sanctions, of which the Court twice warned, are needed. Dkt. Nos. 90, at Tr. 58:16-24; 100, at Tr. 7:1-8; Aug. 12 Order. Defendants should not be allowed to profit from their conduct. *See EverHome Mortg. Co.*, 2011 WL 4056043, at *3.

## CONCLUSION

For the foregoing reasons, the EEOC respectfully asks that the Court award the requested case related and monetary sanctions. *Supra* 1-2. The EEOC further asks that, should monetary

sanctions be awarded, the Court allow it 14 days from any order to submit a fee application.

Dated: New York, New York
August 31, 2026

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

*/s/ Renay M. Oliver*
Renay M. Oliver
Trial Attorney
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
Tel: (929) 506-5289
Fax: (212) 336-3623
renay.oliver@eeoc.gov