IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ST. CHARLES HOUSING, LP, MENOWITZ MANAGEMENT CORP., and APARTMENT RENTAL ASSISTANCE II, INC. d/b/a APARTMENT CORP.<br><br>Defendants. | 1:23-CV-6436 (RPK)(PK) |

**DECLARATION OF RENAY M. OLIVER**
**IN SUPPORT OF THE EEOC'S**
**MOTION FOR SANCTIONS**

Renay M. Oliver hereby declares under penalty of perjury that the following is true and correct:

1. I am an attorney licensed to practice law before the courts of the State of New York and the United States District Court for the Eastern District of New York. I am counsel for Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC"), in this action against defendants St. Charles Housing, LP, Menowitz Management Corp., and Apartment Rental Assistance II, Inc. d/b/a Apartment Corp. (collectively, "Defendants"). As such, I am fully familiar with the facts, circumstances, and proceedings in this action.

2. I make and submit this Declaration in support of the EEOC's motion for sanctions.

**The EEOC's Pre-Suit Investigation**

3. Defendants operate a multigenerational family business of vast real estate holdings consisting of more than 40 commercial and residential properties across the country. Charging

Party J'Layna Andrus worked as a property manager at Defendants' Lake Charles Place Apartments from late September 2020 through February 8, 2021, when Defendants fired her mere days after learning of her pregnancy.

4. On March 24, 2021, Andrus filed the underlying Charge of Discrimination, EEOC Charge No. 480-2021-01353, alleging pregnancy discrimination (the "Charge").

5. On April 2, 2021, the EEOC served a Notice of Charge and Request for Position Statement ("Notice of Charge") on St. Charles Housing, LP to the attention of Todd Menowitz, advising that Andrus had filed a Charge alleging sex discrimination and retaliation concerning her discharge from employment, in violation of Title VII. Attached hereto as **Exhibit 1** is a true and correct copy of the Notice of Charge, Bates-stamped EEOC_0000017-22.

6. The Notice of Charge also contained a preservation notice, stating:

> **Preservation of Records Requirement**
> EEOC regulations require respondents to preserve all payroll and personnel records relevant to the charge until final disposition of the charge or litigation. 29 CFR §1602.14. For more information on your obligation to preserve records, see http://eeoc.gov/employers/recordkeeping.cfm.

**Ex. 1** at EEOC_0000018.

7. The EEOC's New York District investigated the Charge. Defendants' current counsel, Kenneth Chase, and his firm represented the then-respondent St. Charles Housing.

8. During the EEOC's investigation, the EEOC issued a request for information seeking information about Andrus's employment and St. Charles Housing's employees. Attached hereto as **Exhibit 2** is a true and correct copy of the EEOC's request for information, dated April 11, 2022 ("EEOC's Request for Information"), Bates-stamped EEOC_0000506-08.

9. Relevant here, Request No. 13 of the EEOC's Request for Information sought a list of all individuals employed by St. Charles Housing, LP from January 1, 2020 to present. *See* **Ex. 2**, at EEOC_0000507.

10. In response to Request No. 13, Defendant St. Charles Housing identified just one other individual employed by it: Vicky Tillman. Tillman held the property manager position immediately prior to Andrus. Attached hereto as **Exhibit 3** is a true and correct copy of May 2022 email communications between St. Charles Housing's attorney Brian Fell[1] and EEOC Investigator Debra Richards containing St. Charles Housing's responses to the EEOC's Request for Information, Bates-stamped EEOC_0000486-91.

**<u>The EEOC's Discovery Requests</u>**

11. The EEOC served its first and second set of discovery requests on each Defendant on August 12, 2024 and April, 11 2025.

12. The EEOC's discovery requests sought information about properties "owned or managed" and the entities associated with those properties. The EEOC alleges that Defendants and those entities operate as an integrated enterprise (Menowitz Enterprise). Accordingly, the EEOC requested documents relevant to payroll and personnel records, tax returns and financials, and corporate structure.

13. For example, the EEOC's Interrogatory No. 4 to Menowitz Management and Apartment Corp. sought information concerning the properties Defendants "owned or managed" since January 1, 2020 through present, and the owners of those properties. *See* Dkt. No. 65-11 (Defendants' Response to Interrogatory No. 4)

[1] Mr. Fell worked for Chase Law & Associates and on this matter through at least December 2023 but never filed a notice of appearance in this litigation before departing the firm.

14. The EEOC's requests also sought routine discovery concerning direct comparators and a supervisor-decisionmaker. Among other things, the EEOC requested the identities of any individual who assumed any or all of Andrus's duties following her dismissal (direct comparators) and issued a corresponding document request for the "complete personnel files of the individual(s) identified in response to Interrogatory No. 12." (Interrogatory No. 12, and Document Request No. 12). The EEOC also requested the personnel file of supervisor and decisionmaker Ginger Positerry. (Document Request No. 11). *See* Dkt. Nos. 65-8, 65-9 (Defendant St. Charles Housing's Responses to the EEOC's First Set of Document Requests and Interrogatories, dated September 11, 2024)

***Defendants Comparator and Supervisory Discovery Responses***

15. On September 11, 2024, Defendants identified Deon Tolliver as the individual who assumed Charging Party's role. Dkt. No. 65-9, at Response to Interrogatory No. 12.

16. However, Defendants refused to produce the requested personnel files for Positerry and Tolliver (as the identified comparator).

17. Defendants' object that the request for Positerry's file was "a harassing fishing expedition" and claiming it "disappointing and concerning that the EEOC is engaged in such scorched earth harassing behavior toward a female manager like Ms. Positerry." Dkt. No. 65-8, at Response to Document Request No. 11.

18. Defendants similarly objected to producing comparator records, stating in part:

> The EEOC appears to be engaged in harassing, abusive, and scorched earth discovery tactics by seeking materials patently beyond the scope of permissible discovery or that have any relevance to any issues in the case. The EEOC is seeking to harm providers of low income housing, who employ female managers, by financially punishing those who, like Defendants, help people of limited means. The EEOC is acting improperly, blindly, abusively, and inappropriately. An investigation into what appears to be the improper and irregular origin of the filing of this lawsuit more than 1,300 miles away from the purported incident must be conducted.

*Id.*, at Response to Document Request No. 12.

19. Following the EEOC's motion to compel, *see* Dkt. No. 65; 72, and this Court's orders, Defendants produced personnel records as to comparators Tillman and Tolliver, and for supervisor Positerry, including applications and new hire materials, HUD testing (for Tillman and Tolliver), and information from Defendants' Help System (electronic personnel profile).

20. Defendants also produced in February 2026, 2020 and 2021 payroll records for St. Charles Housing. Those documents identified several never disclosed individuals, including Lillian Granderson, who, like Andrus, was employed *as property manager*. Further, all those individuals were employed *prior* to the EEOC's April 2022 Request for Information but not disclosed to the EEOC. *See* **Ex. 3**.

21. Defendants have not explained why they failed to identify Granderson or any of the other St. Charles Housing employees during the investigation or in their responses to the EEOC's discovery requests.

22. On August 18, 2026, Defendants purported to certify that they had searched for personnel, payroll, and related records but that no additional records could be located as to Vicky Tillman, Deon Tolliver, Ginger Positerry, and Lillian Granderson. Attached hereto as **Exhibit 4** is a true and correct copy of Defendants' Certification of Compliance Pursuant to the Court's July 13, 2026 Order (Item 18).

***Defendants' Integrated Enterprise Responses***

23. The EEOC's Interrogatory No. 4 sought information concerning the properties Defendants "owned or managed" since January 1, 2020 through present, and the owners of those properties. Dkt. No. 65-11. The Court's May 7 Order provided that, in addition to identifying the

owners, if the owners of the property were a limited partnership or limited liability corporation, Defendants were to identify the general partners or members. *See* May 7 Order.

24. On May 20, 2026, pursuant to the Court's May 7, 2026 Minute Entry and Order, Defendants served on the EEOC Defendants Menowitz Management's and Apartment Corp.'s respective Second Supplemental Answers to Plaintiff's Second Set of Interrogatories, with supplemental responses to the EEOC's Interrogatory No. 4 ("Supplemental Answers to Interrogatory No. 4").

25. Attached hereto as **Exhibit 5** is a true and correct copy of Defendant Menowitz Management's Second Supplemental Answers to Plaintiff's Second Set of Interrogatories, dated May 20, 2026.

26. Attached hereto as **Exhibit 6** is a true and correct copy of Defendant Apartment Corp.'s Second Supplemental Answers to Plaintiff's Second Set of Interrogatories, dated May 20, 2026.

27. Defendants' Supplemental Answers to Interrogatory No. 4, state that Menowitz Management and Apartment Corp. manage but do not own property, identifying for Defendants Menowitz Management and Apartment Corp., a combined 42 properties managed and 42 entities as owners of those properties. The 42 associated entities consist of Defendant St. Charles Housing, LP and 40 non-party entities ("Non-Party Entities"). *See* **Ex. 5** at 5; **Ex. 6** at 5.

***The Parties' Stipulation Negotiations***

28. Throughout this litigation, Defendants have denied operating, with the Non-Party Entities, as an integrated enterprise. Defendants further denied having, together, or separately, more than 15 employees during 20 or more calendar weeks in 2020 or 2021, and therefore were not employers for the purposes of Title VII.

29. In fall 2025, the EEOC suggested that the parties enter into a stipulation addressing the integrated enterprise and numerosity issues, the idea being that Defendants would not need to produce all of the payroll, financial, and organizational discovery requested.

30. To that end, on February 2, 2026, the EEOC shared with Defendants a draft stipulation. Defendants firmly rejected it.

31. On March 20, 2026, the day of Defendants' court-ordered deadline, defense counsel advised that his clients were interested in resolving these issues by stipulation. However, Defendants' proposal, for example, limited the integrated enterprise to the named Defendants, lacked factual and statutory language the EEOC deemed necessary to be effective, and prohibited the EEOC from seeking punitive damages.

32. The parties continued to confer, and on April 9, 2026, the EEOC shared a revised prosed stipulation with Defendants that was also rejected. Attached hereto as **Exhibit 7** is a true and correct copy of an email thread with defense counsel, dated April 9, 2026. Page numbers have been added to this thread for ease of citation.

33. At the parties' April 14, 2026 conference, Defendants offered to file their own document setting forth the facts they believed would satisfy the integrated enterprise and numerosity issues, obviating the need for the ordered production. Defendants filed their notice, Dkt. No. 88, on April 15, 2026.

34. As reflected in the parties' April 17, 2026 joint letter, the EEOC disagreed strongly that the Notice effectively addressed these issues. Dkt. No. 89. After a lengthy discussion, the Court came to the same conclusion at the parties' May 6, 2026 conference. May 7 Order.

35. The Court also ordered the parties to confer about possible language for a stipulation but that if the parties had not agreed *and filed* a stipulation by May 12, 2026, the stipulation would no longer be an option to reduce Defendants' obligations under the orders.

36. As described in the EEOC's letters, Dkt. No. 92, 94, the EEOC attempted to confer with Defendants (as ordered) but Defendants did not respond until May 13 – the day *after* the Court's deadline. Accordingly, under the Order, Defendants' complete production would be due.

37. Despite these facts, Defendants continued to demand that the EEOC enter into a stipulation, and refused to comply in full with Defendants' discovery obligations.

38. Defendants failed to comply with the Court's May 7 Order, and, on June 24, 2026, the Court issued an Order to Show Cause, demanding an in-person conference on July 6, 2026, later-rescheduled to July 9, 2026.

39. To avoid that hearing, and without the EEOC's consent or signature, Defendants filed a stipulation concerning the integrated enterprise and numerosity issues as "awaiting countersignature". Dkt. No. 93. That stipulation was an old, *already rejected* EEOC draft that had been *modified* by Defendants unilaterally. *See* Dkt. No. 96.

40. The Court scheduled the show cause hearing for 9 a.m. on July 9, 2026. Defense counsel did not appear until approximately 50 minutes after the start time. Once he arrived, he tried to shift the blame Defendants' noncompliance to the EEOC for not countersigning the stipulation and claimed that the parties had reached agreement, which led to a lengthy discussion about contract law. The Court agreed with the EEOC that the parties had not reached an agreement and ordered Defendants to produce all outstanding ordered discovery. *See* Dkt. No. 97, at Tr. 33:13-34:9, 72:5-11; July 13 Order.

41. Following the parties' July 9, 2026 conference, the undersigned exited the courthouse with defense counsel Kenneth Chase. Defense counsel admitted that "the [ordered] documents are going to show what you think they show"—namely that Defendants and the identified Non-Party Entities operate as an integrated enterprise. He further expressed regret for raising the numerosity issues as a bar to the EEOC's suit.

**<u>Defense Counsel's Conduct</u>**

42. From at least March 2025 to the present, defense counsel has accused EEOC counsel of "defamation" based on a press release the EEOC issued in 2023. Attached hereto as **Exhibit 8** is a true and correct email thread with defense counsel, dated March 20, 2025, with page numbers marked for citation purposes.

43. From at least March 2025 to the present, defense counsel has demanded that the EEOC voluntarily dismiss its case. *See* **Ex. 8**. Attached hereto as **Exhibit 9** is a true and correct email thread with defense counsel, dated January 22, 2026, with page numbers marked for citation purposes.

44. From at least March 2025, to present, defense counsel has demanded to speak with supervisors, questioning the undersigned's ability and authority to litigate this case. *See* **Ex. 8**.

45. Earlier today, defense counsel reiterated this demand to speak with supervisors. Attached hereto as **Exhibit 10** is a true and correct email thread with defense counsel dated, August 31, 2026, with page numbers marked for citation purposes.

46. Defense counsel has also threatened to make complaints, including to the Inspector General, about EEOC counsel's conduct of this litigation. Attached hereto as **Exhibit 11** is a true and correct copy of an email thread with defense counsel, dated March 30, 2026, with

page numbers marked for citation purposes. On April 9, 2026, defense counsel claimed that he had done so. *See* **Ex. 7**.

47. Defense counsel has also accused the EEOC of "demoniz[ing]" Positerry and of targeting his clients, the Menowitz family, for an unspecified improper motive. Attached hereto as **Exhibit 12** is a true and correct copy of an email thread with defense counsel, dated July 30, 2026, with page numbers marked for citation purposes.

48. The EEOC has expended more than 100 hours to obtain this discovery, including over eight hours of court conferences, reviewing discovery responses and identifying deficiencies, drafting and responding to more than 16 substantive letters, engaging in more than 10 conferral calls exchanging more than 100 emails, and drafting this motion.

Dated: August 31, 2026

*<u>/s/ Renay M. Oliver</u>*
Renay M. Oliver
Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Fl.
New York, NY 10004
Tel. (929) 506-5289
renay.oliver@eeoc.gov